UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE KOBUS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>Defendant. | Case No. 25-cv-00770-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 30 |

Pending before the Court is Defendant's motion to dismiss.  *See* Dkt. No. 30 ("Mot.");

Dkt. No. 33 ("Opp."); Dkt. No. 35 ("Reply").  The Court finds this matter appropriate for

disposition without oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).  For

the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion

to dismiss.

## I.    BACKGROUND

Plaintiffs Marie Kobus, Niesha Lewis, Mary Devaney Sherengo, Ernell Vance, and Nicole

Davis filed a putative class action lawsuit against Defendant The Proctor & Gamble Company in

January 2025.  *See* Dkt. No. 1 ("Compl.").  Plaintiffs allege that five of Defendant's products[1] are

prominently labeled to include "retinol," a skincare ingredient which "is widely understood by the

consuming public" to "reduce the appearance of fine lines and wrinkles, fade dark spots on skin,

prevent premature aging, and to generally maintain healthy skin."  *Id.* ¶¶ 1, 22, 29.  Despite this

---

[1] The products at issue are (1) Cleaning & Renewing Body Wash with Retinol ("Retinol Body Wash"); (2) Nighttime Rinse-off Body Conditioner with Retinol ("Retinol Rinse-Off Conditioner"); (3) Smoothing Daily Facial Cleanser Retinol 24 + Peptide ("Retinol Facial Cleanser"); (4) Renewing Exfoliating Cleanser with Retinol ("Retinol Exfoliating Cleanser"); and (5) Cleansing Melts + Retinol ("Retinol Cleansing Melts").  Compl. ¶ 3.

United States District Court
Northern District of California

United States District Court
Northern District of California

labeling, which "purport[s] to deliver the commonly understood dermatologic benefits of retinol," these products allegedly cannot provide such benefits because "[b]y design and according to the products' directions for use," each of the products "is washed off the skin with water soon after it is applied, preventing any meaningful interaction with the skin." *Id.* ¶¶ 2, 49.  According to Plaintiffs, topical retinol must remain on the skin for hours to permeate the skin barrier and have any effect.  *Id.* ¶ 24.  Plaintiffs allege the prices of these products are higher because they are marketed to contain retinol.  *Id.* ¶ 52.

Plaintiffs contend that the advertising "conveyed by the product packaging and reinforced by other marketing and advertising" is deceptive.  *See id.* ¶ 57.  They assert violations of state consumer protection laws on behalf of a multistate class and unjust enrichment on behalf of a nationwide class.  *Id.* ¶¶ 62, 124.  They also assert violations on behalf of state subclasses for (1) New York General Business Law §§ 349 and 350, *id.* ¶¶ 69–82; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, *id.* ¶¶ 83–94; (3) the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, *id.* ¶¶ 95–102; (4) the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*, *id.* ¶¶ 103–12; and (5) the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, *id.* ¶¶ 113–22.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) allows a party to move to dismiss for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  The issue of Article III standing is jurisdictional and is therefore "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  To meet the burden of establishing standing, plaintiffs must show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).  And where a plaintiff seeks injunctive relief, they must also demonstrate a "real and immediate threat of repeated injury."  *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quotation omitted).

United States District Court
Northern District of California

**B.    Rule 12(b)(2)**

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Where a state, like California, "allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution," federal courts ask whether the exercise of jurisdiction over a defendant "comports with the limits imposed by federal due process." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); Cal. Civ. Proc. Code § 410.10 (providing that California's long-arm statute is coextensive with the federal due process clause). The Due Process Clause requires that the defendant have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (quotation omitted). There are two types of personal jurisdiction: "general or all-purpose" and "specific or case-linked." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**C.    Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not

"accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotation omitted).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III.    DISCUSSION

Defendant argues that (1) Plaintiffs lack standing; (2) the Court lacks personal jurisdiction over the New York, Florida, and Illinois named Plaintiffs; (3) Plaintiffs have not plausibly pleaded any omissions or misrepresentations; (4) Plaintiffs have not plausibly pleaded their consumer protection claims; and (5) Plaintiffs have not plausibly pleaded their unjust enrichment claim. Mot. at 12.

### A.    Standing

#### a.    Injunctive Relief

First, Defendant argues that Plaintiffs lack standing to seek injunctive relief because they have not alleged a plausible future injury. Mot. at 27. Plaintiffs concede that this is the case. Opp. at 28 n.9. The Court **GRANTS** Defendant's motion as to any injunctive relief.

#### b.    Unpurchased Products

Next, Defendant argues that Plaintiffs lack standing to assert claims related to the Retinol Rinse-Off Conditioner, Retinol Exfoliating Cleanser, and Retinol Cleansing Melts because the named Plaintiffs do not allege that they purchased these products. Mot. at 26. In the Ninth Circuit, "[t]here is no controlling authority on whether [p]laintiffs have standing for products they did not purchase." *In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*, 20-CV-03184-HSG, 2021 WL 3191733, at *2 (N.D. Cal. July 28, 2021) (quoting *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012)). "The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged

United States District Court
Northern District of California

4

United States District Court
Northern District of California

misrepresentations are substantially similar." *Miller*, 912 F. Supp. 2d 861 at 869; *see also Valiente v. Simpson Imports, Ltd.*, 717 F. Supp. 3d 888, 896–98 (N.D. Cal. 2024).  If the products are sufficiently similar, "any concerns regarding material differences in the products can be addressed at the class certification stage." *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012).

Courts have found substantial similarity for purposes of standing where: (1) the products are physically similar; (2) the differences between the products are immaterial because the legal claim and injury to the customer is the same; and (3) both the products and the legal claims and injury are similar.  *See Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2014 WL 1024182, at *5 (N.D. Cal. Mar. 13, 2014).  This Court has found that "the best approach is one which focuses on whether the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products." *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, No. 23-CV-03862-HSG, 2024 WL 1643696, at *5 (N.D. Cal. Apr. 16, 2024) (quotation omitted). "That determination necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products." *Id.* (quotation omitted).

The Court finds that the Retinol Facial Cleanser and Retinol Body Wash that Plaintiffs purchased, Compl. ¶¶ 11–15, are substantially similar to the three unpurchased products. Plaintiffs' central theory is that Defendant's retinol-based rinse-off products cannot provide the expected skincare benefits of retinol, which is advertised prominently on the product label. *See* Opp. at 20.  All five products are susceptible to the same theory and are alleged to cause the same injury, since they all contain retinol, display that fact prominently on the front label, are advertised to provide similar skincare benefits, and are allegedly designed to be rinsed off.  Compl. ¶¶ 30–49.  In its reply, Defendant withdraws its argument, agreeing that, to the extent Plaintiffs are arguing that labeling products as "+ RETINOL" or "With RETINOL" is deceptive, "these statements are substantively identical and convey the same meaning."  Reply at 19.  Defendant may re-raise this argument at the class certification phase, but for now, the Court finds that Plaintiffs have standing to pursue claims relating to the three unpurchased products and **DENIES** Defendant's motion to dismiss on this basis.

### c. Other States' Consumer Protection Acts

Finally, Defendant argues that "Plaintiffs lack Article III standing to sue under the consumer protection laws of States in which they do not reside, did not purchase the Products, and were not injured." Mot. at 27–28. Defendant acknowledges that this Court has very recently rejected this position in *Hamzeh v. Pharmavite LLC*, No. 24-CV-00472-HSG, 2025 WL 621891 (N.D. Cal. Feb. 26, 2025), but urges the Court to reconsider. Mot. at 28.

As the Court recognized in *Hamzeh*, the Ninth Circuit recently adopted the approach that "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015). The Ninth Circuit observed that the question of whether the named plaintiffs are adequate representatives of unnamed plaintiffs is a question of class certification, "not a question of standing." *Id.* Since that decision, many courts have ruled that a plaintiff in a putative class action only has standing to assert claims under the laws of states where the plaintiff resides or was injured. *See Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908–09 (N.D. Cal. 2019) (collecting cases); *Sultanis v. Champion Petfoods USA Inc.*, No. 21-CV-00162-EMC, 2021 WL 3373934, at *5 (N.D. Cal. Aug. 3, 2021) (collecting cases).

But a "growing minority of courts" in the Ninth Circuit have held that this matter "is not a standing question that needs to be decided at the motion to dismiss stage." *Sultanis*, 2021 WL 3373934, at *5. As some of those courts have reasoned, "whether a named plaintiff can represent class members whose claims arise under the laws of different states does not appear to be a question of standing [because] [Plaintiffs do] not [themselves] seek to raise a claim under the laws of a different state; rather, [they] seek to represent a class member who can raise such a claim." *Patterson v. RW Direct, Inc.*, No. 18-CV-00055-VC, 2018 WL 6106379, at *1 (N.D. Cal. Nov. 21, 2018). Those courts, finding that the plaintiff "established . . . the 'necessary stake' in litigating the class's claims for purposes of standing," have opted to address the matter at class certification. *Id.* (quoting *Camreta v. Greene*, 563 U.S. 692, 701 (2011)); *see also Sultanis*, 2021 WL 3373934, at *5 (collecting cases). Since the question of whether class certification should be decided before

or after standing is left to the district court's discretion, this Court held that "where Plaintiff's standing in California is uncontested and where Plaintiff seeks to represent a broader class of similarly affected consumers who may be able to raise claims under other, as yet undifferentiated state laws, the Court declines to dismiss for lack of standing." *Hamzeh*, 2025 WL 621891, at *4.

Defendant does not argue that Plaintiffs Kobus and Lewis lack standing in California, or that the remaining Plaintiffs lack standing in their respective states of New York, Illinois, and Florida. Defendant asserts that Plaintiffs have not shown how the remaining ten states in the multistate class have similar consumer protection acts. Mot. at 30. But it is Defendant's burden in a motion to dismiss to articulate how they are dissimilar, and it has not done so. Instead, Defendant points to one place in the complaint where Plaintiffs miscite the New Jersey consumer protection statute. *Id.* at 30. This is inadequate. *See Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111, 1134 (N.D. Cal. 2023) (finding that defendant, who made a "meager showing about other states' laws," did not establish that other states' consumer protection regimes would leave plaintiff unable to represent consumers in those states); *Hamzeh*, 2025 WL 621891, at *4 (noting that "neither party has addressed potential differences in the state consumer protection statutes at issue here or the potential choice of law issues").[2] Beyond this, Defendant does not adequately explain why the Court should revisit its holding in *Hamzeh*. The Court **DENIES** Defendant's motion to dismiss the multistate claim for lack of standing.

Defendant makes several other minor arguments, though not all obviously relate to standing. First, Defendant argues that the Court should still find that Plaintiffs lack individual standing to pursue claims under consumer protection laws in states where they did not purchase the products. Mot. at 28–29 (citing *Hamzeh*, 2025 WL 621891, at *4 n.2). Plaintiffs do not clearly respond to this point. It's not obvious that Plaintiffs are individually bringing claims under consumer protection laws for states other than those where they saw the allegedly deceptive advertising and purchased the product. But to the extent they are, the Court agrees that there are inadequate allegations to support individual claims where Plaintiffs do not allege that they had

---

[2] However, Plaintiffs should clarify their statutory reference on amendment.

United States District Court
Northern District of California

United States District Court
Northern District of California

contacts with Defendant or its products outside of their home states.  Given this, the Court will **GRANT** Defendant's motion to the extent Plaintiffs intended to bring such sweeping individual claims.[3]

Next, Defendant argues that Massachusetts and Texas state laws require pre-suit notice, which does not appear to have been provided here.  Mot. at 29–30.  Under Texas law, "[as] a prerequisite to filing a suit seeking damages, . . . a consumer shall give written notice to the person at least 60 days before filing the suit advising the person in reasonable detail of the consumer's specific complaint and the amount of economic damages, damages for mental anguish, and expenses, including attorneys' fees."  Tex. Bus. & Com. Code § 17.505(a).  Plaintiffs allege that they gave notice a year ago (at the time of filing suit), Compl. ¶ 16, but the notice did not specify the amount of damages, Dkt. No. 1-1.  Plaintiffs do not dispute this.  Opp. at 31.  This defect does not merit dismissal or otherwise suggest Plaintiffs lack standing, but violation of this provision requires abatement of the case for sixty days.  *Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 194 (5th Cir. 1996); *Burgos v. Am. Honda Motor Co., Inc.*, No. 2:23-CV-02128-AB-SK, 2024 WL 2108843, at *10 (C.D. Cal. May 7, 2024) (discussing whether abatement applies to entire case).  Accordingly, Plaintiffs are ordered to provide adequate notice to Defendant within seven (7) days of this order.  Failure to do so will result in dismissal.  The case is **ABATED** until sixty days after the date that written notice is served, Tex. Bus. & Com. Code Ann. § 17.505(e), or until Plaintiffs amend their complaint such that it no longer asserts a cause of action under Texas's consumer protection law.

Similarly, Massachusetts law requires "[a]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any

---

[3] Defendant argues in passing that Plaintiffs lack statutory standing in nine states that do not permit claims to be asserted "extraterritorially by non-resident plaintiffs who did not purchase the product at issue or receive the allegedly misleading advertising in the State."  Mot. at 29.  But as discussed, the complaint seems to be alleging that Plaintiffs can represent consumers in those states, not that the named Plaintiffs themselves can assert claims under the laws of other states. *See Patterson*, 2018 WL 6106379, at *1.  And given the Court's ruling in this paragraph, there should be no concerns that the named Plaintiffs are asserting these state laws extraterritorially.

prospective respondent." Mass. Gen. Laws Ann. ch. 93A, § 9(3). While this does not create any serious issue with standing, the Court **DISMISSES** without prejudice Plaintiffs' Massachusetts claim, since pre-suit notice was not provided before filing the complaint. *Entrialgo v. Twin City Dodge, Inc.*, 368 Mass. 812, 812 (1975) (holding that notice is a "prerequisite to suit and as a special element must be alleged and proved"); *cf. Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1202 (S.D. Cal. 2021) (dismissing).

### B.    Personal Jurisdiction

Defendant argues that the Court lacks personal jurisdiction over Plaintiffs Davis, Sherengo, and Vance. Mot. at 16. "Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). A plaintiff may invoke either general or specific personal jurisdiction. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). General jurisdiction requires a corporation's "affiliations with the State [to be] so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127, (2014) (quotation omitted). A court has specific jurisdiction when the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Id.* (quotation omitted).

Defendant is not a California corporation, and Plaintiffs do not otherwise allege that it is subject to general jurisdiction in California. *See* Compl. ¶ 17 (noting that P&G is incorporated in Delaware and has its principal place of business in Ohio). The Court also lacks specific jurisdiction over the claims asserted by Plaintiffs Davis, Sherengo, and Vance. These named plaintiffs purchased the relevant products outside of California, *id.* ¶¶ 13–15, and Plaintiffs do not allege any other facts tying their claims to Defendant's conduct in California. Plaintiffs do not seem to dispute that the Court lacks traditional general and specific jurisdiction over these named Plaintiffs' claims. *See* Opp. at 16–18.

Instead, Plaintiffs argue that Defendant's reliance on *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017), is misplaced, since that case involved a mass tort action, not a class action. Opp. at 16–17. The Ninth Circuit has "not yet considered the application of *Bristol-Myers* in a class action." *Harrington v. Cracker Barrel Old Country Store, Inc.*, 142 F.4th 678, 686 (9th

United States District Court
Northern District of California

Cir. 2025).  Nevertheless, "the 'overwhelming majority of federal courts,' including courts in this district, 'have held that *Bristol-Myers* applies to claims brought by named plaintiffs in class actions' when federal courts are sitting in diversity."  *Ottesen v. Hi-Tech Pharms., Inc.*, No. 19-CV-07271-JST, 2024 WL 5205539, at *4 (N.D. Cal. Dec. 23, 2024) (quoting *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2019 WL 6612221, at *9 (N.D. Cal. Dec. 5, 2019)).  "Even if a court need not evaluate personal jurisdiction for the claims of absent class members [under *Bristol-Myers*], there is no serious dispute that each *named* plaintiff in a proposed class action must establish personal jurisdiction."  *Wallenstein v. Mondelez Int'l, Inc.*, No. 22-CV-06033-VC, 2023 WL 3102555, at *1 (N.D. Cal. Apr. 25, 2023) (emphasis in original); *see also LeGrand v. Abbott Lab'ys*, 655 F. Supp. 3d 871, 884 (N.D. Cal. 2023) (collecting cases and observing that California district courts "have largely determined that named, out-of-state, class-action plaintiffs in cases based on diversity jurisdiction must establish personal jurisdiction").[4]

Plaintiffs nevertheless urge the Court to exercise pendent party jurisdiction over these three named Plaintiffs, since all of their claims "arise from the same core conduct."  Opp. at 17.  The doctrine of pendent personal jurisdiction permits a court to exercise jurisdiction over a defendant "with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction."  *See Action Embroidery*, 368 F.3d at 1180.  In *Action Embroidery*, the Ninth Circuit found pendent personal jurisdiction appropriate over the plaintiffs' state law claims where the court had already found personal jurisdiction was proper over plaintiffs' federal antitrust claims against the same defendant.  *See id.* at 1180–81.  Citing considerations of "judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties," the Ninth Circuit reasoned that "[w]hen a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the

---

[4] "Circuit Courts and district courts considering its application in federal class action suits have declined to extend *Bristol-Myers* to require unnamed, nonresident class members make a showing of personal jurisdiction."  *LeGrand*, 655 F. Supp. 3d at 883 (citing Sixth Circuit and Seventh Circuit).  But that is not the argument that Defendant is making here.

same suit arising out of a common nucleus of operative facts." *Id.* at 1181. In any event, the Ninth Circuit left the decision whether to exercise pendent personal jurisdiction to the district court's discretion. *See id.*

But while the *Action Embroidery* court exercised jurisdiction over state claims brought by the same plaintiff who asserted federal claims, Plaintiffs here ask the Court to exercise pendent *party* jurisdiction over an out-of-state plaintiff whose claims the Court does not otherwise have jurisdiction over. "[N]early every court considering the issue has concluded pendent party jurisdiction cannot be exercised by a federal court sitting in diversity." *LeGrand*, 655 F. Supp. 3d at 885 (quoting *Sloan*, 2019 WL 6612221, at *9).[5] Plaintiffs argue that, under this approach, the New York, Illinois, and Florida Plaintiffs would have to refile in those states, wasting judicial resources. Opp. at 18. That may be so, but the Court follows the majority of courts that nonetheless decline to exercise pendent party jurisdiction in these circumstances. *See, e.g.*, *Wallenstein*, 2023 WL 3102555, at *2 (noting this same tension); *Pereda v. Gen. Motors LLC*, No. 21-CV-06338-JST, 2022 WL 19975388, at *5 (N.D. Cal. Dec. 9, 2022) (noting that the "Supreme Court rejected virtually identical arguments in *Bristol-Myers*, and they do not become more persuasive in the present context").

For these reasons, the Court declines to exercise pendent jurisdiction over Plaintiffs Davis, Sherengo, and Vance, as their claims "arise from out-of-state activities with no connection to California." *Ottesen*, 2024 WL 5205539, at *4. The Court **DISMISSES** the individual claims brought by Plaintiffs Davis, Sherengo, and Vance and **DISMISSES** Counts II, III, VI, and VII.[6]

---

[5] Plaintiffs argue that this Court's decision in *Kaiser Foundation Health Plan Inc. v. Merck & Co. Inc.*, No. 21-CV-05497-HSG, 2025 WL 844415 (N.D. Cal. Mar. 18, 2025), supports its position. Opp. at 18. In that case, the Court exercised pendent jurisdiction over a named plaintiff's out-of-state claim where it already had jurisdiction over the plaintiff's California claim. *Id.* at *6. But it observed that "courts have declined to exercise pendent *party* jurisdiction over claims brought by out-of-state plaintiffs." *Id.* (emphasis in original). That is precisely what Plaintiffs are asking for here.

[6] Defendant argues that this approach is inconsistent with the Court's approach to standing, since it would "defy logic to hold that this Court lacks jurisdiction to adjudicate Florida Plaintiff Vance's FDUTPA claim as a named Plaintiff, while simultaneously holding that California Plaintiff Kobus may pursue a FDUTPA claim on Plaintiff Vance's behalf as an absent class member." Mot. at 30 n.6. Defendant conflates standing and personal jurisdiction here— Defendant did not ask this Court to address whether the Court also lacks personal jurisdiction over

### C.    Failure to Plead Misrepresentations or Omissions

Defendant argues that Plaintiffs do not plausibly allege any actionable misrepresentations or omissions.  Mot. at 17.  Plaintiffs agree that the labels are factually accurate in that the products contain retinol, but they argue that Defendant's "prominent use of 'Retinol' is actionable because it misleads consumers into believing the product will deliver the retinol's benefits, even though its rinse-off format renders that impossible."  Opp. at 18, 20.

California law prohibits advertising which "although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002), *as modified* (May 22, 2002)).  Plaintiffs' claims are governed by the "reasonable consumer" test.  *See Williams*, 552 F.3d at 938; *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (applying standard to CLRA and UCL claims).[7]  "Under the reasonable consumer test, [Plaintiffs] must show that members of the public are likely to be deceived." *Williams*, 552 F.3d at 938 (quotations omitted).  "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Rather, the test is whether "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on" a motion to dismiss. *Williams*, 552 F.3d at 938.

Plaintiffs identify five products, all of which "prominently displayed" the fact that they contained retinol in all caps on the front label.  Compl. ¶¶ 30, 36, 39, 42, 47.  Plaintiffs allege that retinol is "widely understood by the consuming public" to have antiaging properties, but that

absent class members' Florida, New York, and Illinois claims.  The Court acknowledges the potential conundrum here and the difficult and unsettled questions regarding standing and personal jurisdiction in multistate class actions.  Nevertheless, that is not an adequate argument against this outcome.

[7] The Court will assume for the purposes of this order that Plaintiffs are correct that the consumer protection laws in Count I are all similar to California's, Compl. ¶ 62 n.24, except where Defendant argues otherwise.

United States District Court
Northern District of California

"none of the Retinol Rinse-Off Cleansers can provide the skincare benefits associated with retinol" because "according to the products' directions for use, each Retinol Rinse-Off Cleanser is washed off the skin with water soon after it is applied, preventing any meaningful interaction with the skin." *Id.* ¶¶ 1, 49–50. Plaintiffs allege language in the product names and packaging that support their claim that each of these products was designed to be washed off. *Id.* ¶¶ 30, 32 (Retinol *Body Wash* and "Use nightly. Lather with puff and rinse.") (emphasis added); 36 (Retinol *Rinse-Off* Conditioner) (emphasis added); 39 ("[R]inse with clean water."); 42 ("Rinse."); 47–48 (describing product as facial cleanser and comparing it to body wash).

This is inadequate to state a claim. Plaintiffs argue that "[a] product label's take-away message is actionable when it implies—through statements, images, and other elements of the product's label—benefits the product cannot provide." Opp. at 23–24. But it's not clear from Plaintiffs' allegations how any statements, images, or other elements implied certain benefits from retinol. Plaintiffs assert that consumers widely understand retinol (and products labeled to contain it) to provide specific benefits, Compl. ¶ 1, but they offer no factual allegations supporting this claim. Plaintiffs also appear to concede in their opposition that the product directions and websites did not themselves create the deceptive message that these products would provide benefits specifically associated with retinol. *See, e.g.*, Opp. at 23 ("Plaintiffs do not allege that the directions themselves are deceptive."); *id.* at 24 (noting that "Plaintiffs do not allege reliance on online statements" which are "referenced because [they repeat] the same deceptive advertising message already conveyed by the products' packaging and labeling").[8]

Plaintiffs sometimes imply that the product packaging "conveys that the cleansers provide the benefits associated with leave-on retinol products," *id.* at 24, but the cited excerpts of product packaging do not support this point. Plaintiffs do not cite any relevant language from the product packaging for the Retinol Exfoliating Cleanser or the Retinol Cleaning Melts. Compl. ¶¶ 42, 47. And the remaining packaging citations reference generic skincare benefits that do not appear to be tied to retinol in the packaging. *Id.* ¶¶ 30 ("wake up to renewed, youthful looking skin,"

_____

[8] Plaintiffs also agree that their "theory does not depend on how the Retinol Rinse-Off Cleansers are packaged, delivered, or stored." Opp. at 25.

13

"Replenishes Skin's Moisture Barrier," and "Vibrant Skin Overnight"); 36 ("infuses skin with concentrated moisture overnight to help stop dry skin); 39 ("SMOOTHING").  Because these excerpts do not discuss the benefits of retinol specifically, these can only be relevant if Plaintiffs adequately allege that consumers associate these benefits specifically with retinol.  As mentioned above, Plaintiffs have not done so.

Because these sparse allegations "depend[] on the argument that labeling a product with the name of one of its ingredients is, by itself, an actionable misdescription of a product characteristic," Reply at 10, the Court finds that this is "the rare situation in which granting a motion to dismiss is appropriate," *Williams*, 552 F.3d at 939.  The Court cannot find—and Plaintiffs do not provide—any cases that have permitted similar allegations to survive a motion to dismiss.[9]  Comparable cases have survived because something else in the label suggested the purportedly unattainable benefits.  *Compare Grimbaldeston v. Saraya USA, Inc.*, No. 25-CV-05649-RFL, 2025 WL 3677857, at *3 (N.D. Cal. Dec. 17, 2025) (noting that "it is plausible that a reasonable consumer would believe that a product prominently labeled 'Monk Fruit Sweetener,' *and extolling the benefits of the fruit*, would contain more than 1.15% monk fruit" (emphasis added)), *with Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1081 (N.D. Cal. 2017) ("Plaintiff makes no allegations that Defendant's labels state that the lack of high fructose corn syrup in Defendant's products causes Defendant's products to be healthier.  Instead, Plaintiff's theory is based on the premise that "some consumers" think that products without high fructose corn syrup are healthier than products that contain other types of added sugar.").

Here, Plaintiffs have not adequately alleged that "a reasonable consumer is [] likely to engage in [the] inferential leaps" they describe solely from the prominence of the word "retinol" in the label.  *See Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1139 (2020).  Because Plaintiffs openly acknowledge this is their theory for all of their consumer protection claims, the

---

[9] Plaintiffs cite *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969 (7th Cir. 2020), which considered whether labels for aloe vera gel were misleading because they had "little or no therapeutic benefit" and could not "be used effectively for their stated purposes." *Id.* at 976–77.  However, the court was addressing the lack of evidence at the summary judgment stage, and it did not address the validity of the legal theory or what was required at the pleading stage.

United States District Court
Northern District of California

14

Court **DISMISSES** Counts I, IV, and V.[10]

####        D.        Unjust Enrichment

Defendant additionally argues that Plaintiffs' unjust enrichment claim fails because the underlying consumer protection claims fail.  Mot. at 35.  Plaintiffs do not dispute that their unjust enrichment claim asserts the same legal theory and rises and falls with their consumer protection claims.  The Court thus **DISMISSES** Count VIII.  *See Gudgel v. Clorox Co*., 514 F. Supp. 3d 1177, 1188 (N.D. Cal. 2021).[11]

## IV.    CONCLUSION

Defendant's motion to dismiss, Dkt. No. 30, is **GRANTED IN PART** and **DENIED IN PART**, and all of Plaintiffs' claims are **DISMISSED** with leave to amend.  The case is also **ABATED** until sixty days after the date that written notice is served, Tex. Bus. & Com. Code Ann. § 17.505(e), or until Plaintiffs amend their complaint such that it no longer asserts a cause of action under Texas's consumer protection law.  Any amended complaint must be filed within 21 days of the date of this order, and may not add any new claims or defendants.

The Court further **SETS** a case management conference on February 24, 2026, at 2:00 p.m. The hearing will be held by Public Zoom Webinar.  All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg.  All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities.  The parties are further **DIRECTED** to file a joint case management statement

[10] While the Court does not reach Defendant's arguments about preemption, the Court is further persuaded that *only* alleging that an actual ingredient is included prominently on the front label cannot be sufficient when federal law requires Defendant's products to "bear a declaration of the name of each ingredient," 21 C.F.R. § 701.3(a), and requires that the "declaration of ingredients shall appear *with such prominence and conspicuousness as to render it likely to be read and understood* by ordinary individuals under normal conditions of purchase," *id.* § 701.3(b) (emphasis added).

[11] Separately, the Court notes that the parties apparently assume that Plaintiffs are seeking to apply California, Illinois, Florida, and New York law for this claim, even though Plaintiffs do not specify what state laws they are bringing this claim under.  Defendant does not raise this argument, but Plaintiffs should specify this on amendment.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011).

United States District Court
Northern District of California

by February 17, 2026.

**IT IS SO ORDERED.**

Dated:

_____

HAYWOOD S. GILLIAM, JR.
United States District Judge