UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDI ADLER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WILLIAMS, et al.,<br><br>　　　　　Defendants. | Case No. 24-cv-03939-HSG<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR SUMMARY**<br>**JUDGMENT**<br><br>Re: Dkt. No. 42 |

Pending before the Court is Defendants' motion for summary judgment. Dkt. No. 42 ("Mot."); Dkt. No. 46 ("Opp."); Dkt. No. 52 ("Reply"). The Court held a hearing on the motion. Dkt No. 59. For the reasons detailed below, the Court **GRANTS** the motion.

## I.    BACKGROUND[1]

On June 28, 2022, a small fire started outside Plaintiff Randi Adler's house. Dkt. No. 46-2 ("Adler Decl.") ¶ 2. Defendants Officer Williams and Officer England of the City of Oakley Police Department arrived shortly after, *id.* ¶ 3, as did non-party Officer Koerner, *see* Dkt. No. 46-1, Ex. A-1 at 0:30–1:40 (Koerner's body-worn camera footage). The fire was already out by time the officers arrived. *See* Ex. A-1 at 1:35; Adler. Decl. ¶ 3. Officer Koerner entered the house and inspected the backyard. *See* Ex. A-1 at 1:52–3:20. After inspecting the backyard, and as he went back through the home, Officer Koerner saw Plaintiff sitting at the table crying. *Id.* at 3:20. Officer Williams was also present. *See* Dkt. No. 42-1, Ex. C at 16:00. Officer Koerner then

---

[1] At this stage, the Court views the record in the light most favorable to Plaintiff, and makes all reasonable inferences in her favor. However, neither party disputes the accuracy or authenticity of the body-worn camera footage, so the Court also "view[s] the facts in the light depicted by the videotape." *See Scott v. Harris*, 550 U.S. 372, 381 (2007).

United States District Court
Northern District of California

informed several officers that the fire was likely started by a lit cigarette from Plaintiff's daughter, Erin, and said Plaintiff was having "a heart issue" and was "a mess." *Id.* at 3:42–4:20. Defendants were both present for this conversation. *See id.* Inside the house, Plaintiff told the medic that she did not want to go to the hospital and was having problems with asthma. *Id.* at 9:00–9:30.

About a minute later, Officer Koerner re-entered the home. *See* Dkt. No. 46-1, Ex. A-2 (Koerner's body-worn camera footage). Plaintiff was visibly upset and told Officer Koerner that she "can't do this anymore." *Id.* at 0:35–0:40. She told Officer Koerner, "Last night I felt like just taking a punch of [p]ills and killing myself cause I can't stand it anymore. I'm not suicidal but it's just between Erin and everything that's going on, I can't deal with it anymore." *Id.* at 0:54–1:11. Officers Williams and England were not visible in the home when Plaintiff made these comments. *See id.* Officer Koerner asked if Plaintiff was serious about taking the pills, and she said no. *Id.* at 1:40–1:46. He asked if she needed him to send her to the hospital, and she said no, "that was yesterday," and she didn't want to go. *Id.* at 1:46–2:03. Officer Koerner then went outside and told a fireman and medic that Plaintiff didn't want an ambulance and "said she can't take it, she said she wants to take pills, but she doesn't – she's not suicidal." *Id.* at 2:20–2:50. Officer Koerner told them not to cancel the ambulance "just in case . . . she changes her mind" even though it seemed unlikely she would go. *Id.* at 3:00–3:30. Officers Williams and England were not present for this conversation either.

After the ambulance arrived, Officers Koerner, Williams, and England placed Plaintiff on a 5150 hold and detained her inside her home, before placing and restraining her on a gurney. Adler Decl. ¶ 6; Dkt. No. 42-1, Ex. K at 0:00–3:30 (Koerner footage); Dkt No. 42-1, Ex. I at 0:00–3:00 (Williams footage); Dkt. No. 42-1, Ex. N at 0:30–4:00 (England footage). Officer Koerner stated that she had made suicidal threats, and Plaintiff said, "I did not. I said yesterday I felt it." Ex. I at 0:45–0:55. Officer Koerner said, "You just said today, I have it on video." *Id.*; *see also id.* at 3:44–4:05 (similar exchange). Plaintiff shouted several times that she was not suicidal as she was

2

being led out. *See e.g.*, *id.* at 1:10.[2]  She was taken to the hospital, where she was informed that she had not suffered a mental health crisis and was eventually released after a few hours.  Adler Decl. ¶ 7.

In May 2025, Plaintiff filed her operative first amended complaint against Defendants Williams and England, along with unnamed Does 1–50 of the City of Oakley Police Department and unnamed Doe paramedics 51–80.  *See* Dkt. No. 30 ¶¶ 2–4.  Plaintiff brings a § 1983 claim for false arrest.  *Id.* ¶¶ 17–23.[3]  Officer Koerner is not a named defendant.

## II.    LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party.  *Id.*  But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000).  In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  A nonmoving party must also "identify with reasonable particularity the evidence that

[2] As Plaintiff was being loaded onto the ambulance, her daughter also told Officer Williams that she had a video of Plaintiff saying she wanted to kill herself.  Ex. I at 6:55–7:00.

[3] Plaintiff also brought claims for excessive force and unlawful entry, but she has since dismissed those claims.  *See* Dkt. No. 60.

precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quotation omitted).  If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III.    DISCUSSION

Defendants argue that (1) non-party Officer Koerner made the decision to place Plaintiff on a 5150 hold, and Defendants Williams and England cannot be liable for reasonably following his instructions; (2) there was probable cause for the 5150 hold; and (3) Defendants are entitled to qualified immunity.  Mot. at 24–27.  The Court concludes that Defendants Williams and England are entitled to qualified immunity.

The doctrine of qualified immunity protects government officials from liability for civil damages as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It is intended to give government officials "breathing room to make reasonable but mistaken judgments about open legal questions."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  In theory, the doctrine protects "all but the plainly incompetent or those who knowingly violate the law."  *Id.* (quotation omitted).  To determine if an officer is entitled to qualified immunity, the Court considers whether (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established at the time of the incident.  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Courts may choose which prong to address first.  *Id.* at 236.  Under either prong, though, the Court may not resolve genuine disputes of fact in favor of the party seeking summary judgment on qualified immunity grounds, and must, as in other cases, view the evidence in the light most favorable to the nonmovant.  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

Under the second prong of the qualified immunity inquiry, "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it."  *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 611 (2015) (quotation omitted).  While this does not "require a case directly on point, . . . existing precedent must have placed the statutory or

United States District Court
Northern District of California

4

constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Id.* at 742. The Supreme Court has further instructed that, where "the result depends very much on the facts of each case . . . officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Nicholson v. City of L.A.*, 935 F.3d 685, 695 (9th Cir. 2019) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)); *cf. D.C. v. Wesby*, 583 U.S. 48, 64 (2018) ("[W]e have stressed the need to identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." (quotation omitted)).

Put another way, "[i]t is insufficient for a legal principle to merely be 'suggested by then-existing precedent.'" *Perez v. City of Fresno*, 98 F.4th 919, 924 (9th Cir. 2024) (quoting *Wesby*, 583 U.S. at 63). Instead, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.'" *Id.* (quoting *Wesby*, 583 U.S. at 63); *see also Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) ("A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" (quotation omitted)). The Ninth Circuit "routinely rel[ies] on the intersection of multiple cases when holding that a constitutional right has been clearly established," on the ground that "[t]his approach is required by the Supreme Court's instruction that qualified immunity is improper where a legal principle has a sufficiently clear foundation in then-existing precedent." *Polanco v. Diaz*, 76 F.4th 918, 930, n.8 (9th Cir. 2023) (quotation omitted).

"Under section 5150, an officer may detain any person the officer determines, 'as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled.'" *Bias v. Moynihan*, 508 F.3d 1212, 1220 (9th Cir. 2007) (quoting Cal. Welf. & Inst. Code § 5150). "The officer's determination must be based on probable cause." *Id.* "In the [broader] context of an unlawful arrest . . . the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Rosenbaum*

*v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (emphasis in original). "The linchpin of the qualified immunity analysis is the reasonableness of the officer's conduct in the particular case at hand." *Id.* at 1078.

Plaintiff's theory is that Defendants violated her constitutional rights by placing her on a 5150 hold without probable cause. Opp. at 4. She claims that "[t]he law has . . . been clearly established . . . that probable cause does not exist under section 5150 unless facts are known to the officer that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself." *Id.* at 8. This is true, but it defines the "clearly established law" at a high level of generality, exactly as the Supreme Court has forbidden. Plaintiff must engage with the reasonableness of Defendants' conduct in light of the specific facts at issue.

Even when viewing the facts in the light most favorable to Plaintiff, then-existing precedent was not so clear that "every reasonable official would interpret it to establish the" illegality of Defendants' participation in the 5150 hold here. *See Wesby*, 583 U.S. at 63. It is undisputed that Officer Koerner made the 5150 determination. Dkt. No. 42-1, Ex. D ¶ 13 (Koerner declaration); Dkt. No. 42-1, Ex. H ¶ 3 (England declaration stating "I was informed that Ofc. Koerner had decided to place Ms. Adler on a 5150 Hold"); Dkt. No. 42-1, Ex. B ¶ 4 (Williams declaration stating "I am aware, from Ofc. Koerner, that Ms. Adler made a comment(s) to him about being potentially suicidal and then Ofc. Koerner later made the decision to place her on a 5150 Hold"). The Ninth Circuit has explained that, while "officers . . . have an ongoing duty to make appropriate inquiries regarding the facts received or to further investigate if insufficient details are relayed[,] . . . [w]here an officer has an objectively reasonable, good-faith belief that he is acting pursuant to proper authority, he cannot be held liable if the information supplied by other officers turns out to be erroneous." *Motley v. Parks*, 432 F.3d 1072, 1081–82 (9th Cir. 2005), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012). Even if the Court thought Officer Koerner's original probable cause determination was incorrect (an issue it does not reach), there is no evidence that Defendants were objectively unreasonable in relying on that determination. The body-worn camera footage shows that only Officer Koerner was in the

6

room when Plaintiff said she had been thinking about killing herself the night before. And there is no evidence that Defendants had any reason to doubt Officer Koerner's original determination.

Plaintiff argued at the motions hearing that Defendants became liable once they entered the house and heard Plaintiff say she was not suicidal. There is no factual dispute about what happened once Defendants entered the house to detain Plaintiff: she shouted several times that she was not suicidal, and Officer Koerner stated that she had just told him that she was. Plaintiff then twice acknowledged that she had said she wanted to take pills yesterday. *See* Ex. I at 0:45–0:55, 3:45–4:00.[4] A reasonable officer could have understood this to affirm Officer Koerner's prior determination and reasonably believe that there was probable cause for the 5150 hold. *Cf. Worthy v. City of Berkeley*, 573 F. Supp. 3d 1398, 1413–14 (N.D. Cal. 2021), *order clarified*, No. 20-CV-05558-EMC, 2021 WL 5758887 (N.D. Cal. Dec. 3, 2021) (finding qualified immunity where another officer's descriptions of allegedly threatening behavior was "sufficient to outweigh [defendants'] firsthand observations of [p]laintiff's lack of threatening conduct for the duration of their time at the scene [and] to support their determinations that they [had] probable cause to complete the § 5150 detention" (emphasis omitted)).[5] The Court cannot say that "every reasonable official" would have understood that they lacked probable cause to detain someone who was clearly distressed and admitted they had considered taking pills to kill themselves at some point in the past 24 hours. *See Mullenix*, 577 U.S. at 11 (quotation omitted).

Ultimately, "existing precedent" does not "squarely govern[] the specific facts at issue." *Nicholson*, 935 F.3d at 695 (quotation omitted). Plaintiff argues that other cases that found

---

[4] From these clips, it appears that some of the officers may have mistakenly thought that Plaintiff's conversation with Officer Koerner took place on the prior day, or that she told Officer Koerner she was suicidal that day and didn't understand what day it was. From the other videos, it's clear that she had told Officer Koerner *that day* that she had considered taking the pills *the prior day*. But it's not surprising that some of the officers were confused, since Plaintiff's language was unclear. The officers' subjective understanding is irrelevant here, though, since Plaintiff was conceding in every case that she had told Officer Koerner that she had considered taking pills to kill herself at some point in the previous 24 hours.

[5] Other undisputed evidence supports this conclusion. For example, shortly before these events transpired, Plaintiff's daughter told Officer Williams that Plaintiff was getting violent and that she was scared of Plaintiff. Ex. C at 1:20–1:37.

probable cause involved individuals who were substantially more dangerous to themselves or others. *See* Opp. at 5–6. But that does not clearly establish the opposite proposition that there was no probable cause on these less extreme facts. If anything, the most similar cases suggest Defendants did have probable cause here. *See, e.g.*, *Bias*, 508 F.3d at 1220 (finding probable cause where plaintiff wrote a letter stating she would kill herself and appeared depressed, though she also stated she would do "whatever" she wanted when asked follow-up).[6]

To avoid summary judgment, Plaintiff was required to "present significant probative evidence tending to support her allegations." *Bias*, 508 F.3d at 1218 (quotation omitted). She has not come close to doing so, having only introduced one mostly conclusory declaration from Plaintiff and two clips from Officer Koerner's body-worn camera footage. None of this evidence creates a genuine issue of material fact as to the Court's finding of qualified immunity. Accordingly, the Court **GRANTS** Defendants' motion.

## IV.   CONCLUSION

The Court **GRANTS** Defendants' motion for summary judgment, Dkt. No. 42. The Clerk is directed to enter judgment in favor of Defendants and close the case.[7]


**IT IS SO ORDERED.**

Dated:  4/2/2026

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[6] The Ninth Circuit has observed that it is "aware of no case that would preclude a reasonable officer from believing there was probable cause to detain a person who alluded to committing suicide." *Hall v. City of Fremont*, 520 F. App'x 609, 611 (9th Cir. 2013) (non-binding case the Court considers for its persuasive value).

[7] Neither party addresses what the Court should do with the Doe Defendants. Because Plaintiff has had ample opportunity to conduct discovery and identify these Defendants, the Court **DISMISSES** these unnamed, unserved parties. *See Drewry v. Cnty. of Riverside*, No. EDCV 20-2554 JGB (SHKX), 2023 WL 2627740, at *6 (C.D. Cal. Jan. 23, 2023) (dismissing where plaintiff had not sought leave to amend and the deadline to add parties had passed); *Sernoffsky v. Novak*, 773 F. Supp. 3d 988, 1005 n.10 (S.D. Cal. 2025) (dismissing where discovery had closed).